UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PHILLIP SAEGER,

    Plaintiff,

v.                                Case No. 12-C-188

LISA AVILA[1]
Superintendent, Sturtevant Transitional Facility

    Defendant.

## DECISION AND ORDER GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Phillip Saeger, who is currently serving a sentence at the Sturtevant Transitional Facility, filed a petition seeking federal relief from his state conviction pursuant to 28 U.S.C. § 2254. Saeger was convicted of two counts of burglary as a party to the crime, contrary to Sections 943.10(1m)(a) and 939.05 of the Wisconsin Statutes, and sentenced to seven years and six months imprisonment with five years of extended supervision. He alleges in his petition that an incriminating statement he made to two detectives was involuntary and obtained in violation of his Fifth Amendment right to remain silent. He further alleges that the decision of the Wisconsin Court of Appeals affirming the denial of his motion to suppress the statement is contrary to clearly established federal law. The case has been fully briefed and is now ready for disposition. For the following reasons, Saeger's petition will be granted.

---

[1] On August 13, 2012, the petitioner was transferred to Sturtevant Transitional Facility. Pursuant to Rule 2(a) of the Rules Governing Habeas Corpus Petitions, Lisa Avila, Superintendent of Sturtevant Transitional Facility, is substituted as respondent in place of Ms. Champagne, as the state officer who has custody of the petitioner.

## BACKGROUND

In the course of investigating a series of burglaries in Fond du Lac and Washington counties sometime in 2005, law enforcement officers began focusing their attention on Saeger and put out a request that he be detained. Saeger was later taken into custody in South Beloit, Illinois, and on December 13, 2005, Detective Gerard Kane from the Fond du Lac County Sheriff's Department and Detective Mark Sette from the Washington County Sheriff's Department proceeded there to interview him. Detective Kane read Saeger his *Miranda* rights from a form, which Saeger also read and signed, indicating he was waiving his rights and agreeing to talk to the detectives. They then proceeded to question him about the burglaries they were investigating from about 8:30 p.m. until 1:50 a.m. the following morning. Ultimately, Saeger confessed to participating in several burglaries in the two counties.

Following the issuance of charges in each of the two counties, Saeger moved to suppress his statement on the grounds that it was involuntary and that his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), had been violated. Separate hearings were held on Saeger's motions in each of the counties, but the evidence, as one would expect, was essentially the same. At the beginning of the interview, the detectives advised Saeger of the crimes in which he was a suspect and confronted him with various items of evidence that they believed implicated him. Saeger denied having committed the burglaries and offered alternative explanations of the evidence they described.

After a couple of hours, the course of the interview changed. One of the detectives received a telephone call advising him that a gun had been found at Saeger's girlfriend's house. The gun was identified as being one of the items stolen in the burglaries that occurred in Fond du Lac. It soon became clear to Detectives Kane and Sette that Saeger was fearful of the possibility of federal

2

prosecution for being a felon in possession of a firearm. Kane and Sette told Saeger about the discovery of the firearm and advised him he could face federal charges carrying a potential prison term of 25 years in prison. Given his age at the time (54), Saeger viewed this possibility as a "life sentence." (Response, Ex. C at 49, ECF No. 21-3.)

At that point, Saeger began arguing with the detectives over whether he could be charged federally. As recounted by the Wisconsin Court of Appeals, Saeger testified that "he was scared and angry and said, interspersed with profanity, 'You . . . ain't listening to what I'm telling you. You don't want to hear what I'm saying. You want me to admit to something I didn't . . . do . . . and I got nothin[g] more to say to you. I'm done. This is over.'" *State v. Saeger*, 2010 WI App 135, ¶ 3, 329 Wis. 2d 711, 790 N.W.2d 543 (Ct. App. 2010) (unpublished).

Neither detective could recall whether Saeger made this statement, though Kane testified "it's very possible." (Response, Ex. H at 45, ECF No. 21-8.) Indeed, it appears that Detective Kane was not even aware that under *Miranda* law enforcement officers were required to stop questioning a suspect who stated he no longer wanted to talk to them. When asked if Saeger had at one point informed them he was done talking to them, and whether they had convinced him to continue the interview by promising that they would not have him charged federally, Detective Kane responded that he did not know whether it happened that way or not. He continued: "I mean, obviously, if he stopped talking, we can't make him talk. So, he obviously continued talking for some reason and he never mentioned the word 'lawyer.' So that's all I can tell you for sure." (*Id.*, at 46.) When asked during the hearing on Saeger's motion in the Washington County proceeding whether he would have stopped his conversation with Saeger even if Saeger in fact said he no longer wanted to talk to him, Detective Kane's response suggests he would not: "I guess I have the right to talk all night, that's how I look at

3

it. If he wants to listen, he can; if he doesn't want to, he doesn't have to." (Response, Ex. E at 21, ECF No. 21-5.)

In any event, immediately after Saeger's outburst, the detectives told Saeger that they were not interested in pursuing federal charges against him and that they would agree not to refer the matter of the gun possession to federal authorities. At Saeger's request, the detectives reduced the promise to writing, signed it and provided Saeger a copy. The interrogation then continued, and Saeger eventually confessed to being a "point-man" and "backup" in several of the burglaries. The statement was also reduced to writing and signed by Saeger.

On the basis of this evidence, Saeger argued in the separate proceedings that his statement should be suppressed for two reasons. He claimed that the detectives had violated his rights under *Miranda* when they continued to question him after he told them he was done talking to them. He also claimed that his statement was involuntary because it was induced by police misconduct. As to the later claim, he argued that because county sheriff officers have no authority to issue federal charges, the promise made to him by the detectives was illusory.

Both courts denied Saeger's motion, finding that he did not unequivocally invoke his right to remain silent and that his statement was voluntary. On the voluntariness issue, both courts found that the detectives' promise that they would not charge Saeger federally, notwithstanding the fact that they did not have the power to issue federal charges, was not misconduct and that his statement to them was not coerced. On the *Miranda* question, however, the two courts appear to have differed in their findings as to what Saeger had said.

The Fond du Lac County circuit court, citing the testimony of the detectives given in response to the questions of the prosecutor on direct examination, found that Saeger had not exercised his right

4

to remain silent and that, at best, Saeger had made some ambiguous statement to the effect that he had completed his statement to them. The court made no finding as to precisely what Saeger had said. (Response Ex. C at 42, ECF No. 21-3.)

The Washington County circuit court, on the other hand, found that Saeger's testimony as to what he had said to the detectives was essentially accurate. The court noted that when directly asked whether Saeger had made such a statement, both detectives "were only able to say they didn't recall him saying that he didn't want to make any further statements," which, the court observed, was "far from a denial that those statements were made." (*Id.*, at 51.) Absent a denial, the court concluded, it was "forced to accept those statements ... as having been made." (*Id.*)

Despite this finding, however, the Washington County court also found that Saeger had not unambiguously invoked his right to remain silent. Viewing the statements in the context in which they were made, the court concluded that when Saeger told the detectives he didn't want to talk to them any further, he really didn't mean it; he was just bargaining with them. In explaining its conclusion, the court drew an analogy with negotiating over the price of a car with a car dealer. The court noted that a buyer will often say "no" to the dealer's last offer and start walking away without really meaning to terminate the negotiations. In the view of the court, that is what Saeger was doing here:

> It seems to me that Mr. Saeger's motivation in this context was to get whatever assurances he was in the position to get that he wouldn't be prosecuted under the Trigger Lock law. That his statements that: that's it, I don't want – this is over, I don't want to talk to you any further, basically puts him in a bargaining position. The officers clearly want to be able to talk to him, because he has information they want to obtain. Now Mr. Saeger has a bargaining chip to get what he is concerned about, which is, not to be prosecuted by the Feds.

(*Id.* at 53.) Since Saeger's statement that he no longer wanted to talk to the detectives and proclaiming the interview over could be read in this way, the court concluded that the statement was ambiguous.

5

Absent a clear an unequivocal invocation of his right to remain silent, the court concluded that no *Miranda* violation had been shown.

Reserving his right to appeal the denial of his motions to suppress, Saeger then reached an agreement with the state, and the two cases were consolidated for plea and sentencing in Washington County. On appeal, the Wisconsin Court of Appeals adopted the findings and analysis of the Washington County court as to what Saeger had said to the detectives and affirmed his conviction. The court noted that in Wisconsin, "a statement is equivocal as a matter of law when there are reasonable competing inferences to be drawn from it." 2010 WL 3155264, at *3. The court acknowledged that "a reasonable person could ... read [Saeger's] statement to mean that he actually wanted to invoke his right to remain silent." *Id.* at *3. Taken in context, however, the court concluded that "it was reasonable for the detectives to conclude that his statement was merely a fencing mechanism to get a better deal—one that would free him of exposure to federal charges." *Id.* Because there were reasonable competing inferences that could be drawn from the statement, the court concluded the statement was equivocal as a matter of law and it was therefore insufficient to invoke the right to remain silent. On the question of voluntariness, the court concluded that there was no showing of misconduct by the detectives and that the statement was therefore voluntary. The Wisconsin Supreme Court denied Saeger's petition for review, and he timely filed this petition for federal relief under 28 U.S.C. § 2254.

**LEGAL STANDARD**

Saeger's petition is covered by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, if a state court adjudicated a constitutional claim on the merits, a

6

federal court may grant habeas relief only if the state court decision was contrary to, or involved an unreasonable application of, Supreme Court precedent or if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the state proceeding. 28 U.S.C. § 2254(d); *see also Williams v. Taylor*, 529 U.S. 362, 376 (2000). In reviewing the merits of a petition for habeas relief, "[t]he relevant decision for purposes of our assessment is the decision of the last state court to rule on the merits of the petitioner's claim." *Charlton v. Davis*, 439 F.3d 369, 374 (7th Cir. 2006) (citing *McFowler v. Jaimet*, 349 F.3d 436, 446 (7th Cir. 2003)). Thus, it is the decision of the Wisconsin Court of Appeals that is at issue here.

"An 'unreasonable application' of United States Supreme Court precedent occurs when a state court identifies the correct governing legal rule but unreasonably applies it to the facts of a case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context in which it should not apply or unreasonably refuses to extend that principle to a new context in which it should apply." *Ellison v. Acevedo*, 593 F.3d 625, 632 (7th Cir. 2010) (citing *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005)). The petitioner bears the burden of proving that the state court's application of federal law was unreasonable, and the "unreasonable application" prong of § 2254(d) "is a difficult standard to meet." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003).

**ANALYSIS**

The dispositive issue, in this court's view, is whether the Wisconsin Court of Appeals' decision holding that Saeger did not unequivocally invoke his right to remain silent during his interrogation by Detectives Kane and Sette was contrary to or involved an unreasonable application of clearly established federal law. Under federal law, a person subjected to custodial interrogation by police must

7

first be advised of his right to remain silent, that any statements he makes can be used as evidence against him, and that he has the right to the advice of an attorney during questioning, either retained or appointed. *Miranda*, 384 U.S. at 444. *Miranda* also held that if an individual "indicates in any manner and at any stage of the process" either that he does not want to be interrogated or that he wants an attorney present, questioning must cease. *Id.* at 444-45. Before a statement obtained from a defendant while in custody can be admitted as evidence against him, the state bears the burden of showing that the required warnings were given, that they were understood by the defendant, and that the defendant voluntarily waived them and agreed to answer questions. *Id.* at 475.

More recent cases have held that the invocation of either the right to counsel or the right to remain silent at a custodial interrogation must be unequivocal. *See Davis v. United States*, 512 U.S. 452 (1994); *Berghuis v. Thompkins*, ___U.S. ___, 130 S.Ct. 2250 (2010). In *Davis*, a suspect in a murder investigation made the statement "Maybe I should talk to a lawyer" about an hour and a half into the interview. *Davis*, 512 U.S. at 455. The officers conducting the interview explained to the suspect that if he wanted an attorney, they would stop any questioning of him at once. They then asked him if he was asking for a lawyer. The suspect responded that he was not asking for a lawyer and the questioning continued until after the suspect had made a number of incriminating statements. *Id.* The suspect was later charged with the murder under investigation and, after his motion to suppress his statements was denied, he was convicted. In affirming his conviction, the Supreme Court held that in order to invoke the right to counsel under *Miranda*, "the suspect must unambiguously request counsel." *Id*. at 459. Although a suspect need not speak with the clarity of an Oxford don, the Court acknowledged, "he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an

8

attorney." *Id.* If the suspect's statement is equivocal or ambiguous, law enforcement officers have no obligation to cease their questioning. *Id.* And while it is good practice for officers to clarify a suspect's intent if he makes an ambiguous or equivocal statement concerning counsel, the Court held in *Davis* that they were not required to do so in order to continue questioning the suspect. *Id.* at 461-62.

In *Thompkins*, the Court extended the *Davis* holding to the right of a suspect to remain silent and decline to answer questions. Thompkins, a suspect in a murder investigation, remained largely silent after he was advised of his *Miranda* rights. At no point during the interrogation, however, did he state that he wanted to remain silent, that he did not want to talk with the police, or that he wanted an attorney. 130 S. Ct. at 2256. About 2 hours and 45 minutes into the interrogation, a detective asked Thompkins if he believed in God. Thompkins said he did, and his eyes welled up with tears. The detective then asked him if he prayed to God, and Thompkins said "yes." The detective then asked Thompkins if he prayed to God to forgive him for shooting that boy down, and Thompkins again responded "yes." *Id.* at 2257. Although the interview ended shortly thereafter and Thompkins refused to sign a statement, the statement was allowed as evidence and the jury found Thompkins guilty. After exhausting his state court remedies, Thompkins sought federal relief under 28 U.S.C. § 2254. His petition was denied by the district court, but the Court of Appeals reversed. The Sixth Circuit held that Thompkins' "persistent silence for nearly three hours in response to questioning and repeated invitations to tell his side of the story offered a clear and unequivocal message to the officers: Thompkins did not wish to waive his rights." 547 F.3d at 588. Applying *Davis*, the Supreme Court reversed.

9

In reversing the Court of Appeals, the Court noted "there is no principled reason to adopt different standards for determining when an accused has invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*." 130 S. Ct. at 2260. On the contrary, the Court noted that good reasons existed to apply the same standard for both the right to remain silent and the right to counsel. Requiring an unambiguous invocation of the right to remain silent "results in an objective inquiry that 'avoid[s] difficulties of proof and . . . provide[s] guidance to officers' on how to proceed in the face of ambiguity." *Thompkins*, 130 S.Ct. at 2260 (quoting *Davis*, 512 U.S. at 458-59). Furthermore, requiring a suspect to unambiguously invoke his *Miranda* rights prevents law enforcement officers from having to make "difficult decisions about an accused's unclear intent and face the consequence of suppression 'if they guess wrong.'" *Id.* (quoting *Davis*, 512 U.S. at 461).

The Wisconsin Court of Appeals cited both *Davis* and *Thompkins* in affirming Saeger's conviction, but concluded that neither required suppression of Saeger's statement because, considered in context, his statements were ambiguous. As support for its ruling, the court cited its earlier decision in *State v. Markwardt*, 2007 WI App 242, ¶ 36, 306 Wis.2d 420, 742 N.W.2d 546. There, the court had held that when the suspect said, "[j]ust get me out of here" and "I don't want to sit here anymore," it was not an invocation of the right to remain silent. Viewed in the context of the interrogation, the court held that it was reasonable to believe that the defendant's outburst was "in reaction to being caught in a web of lies, which the officers laid bare." Saeger's outburst, the court concluded, was analogous. 2010 WL 3155264 at *3. Saeger was being uncooperative and untruthful. The detectives also testified that they knew he was an excitable person. Viewed in this context, the court concluded that it was not unreasonable to interpret Saeger's outburst as a negotiating ploy. *Id.*

10

In so ruling, the Wisconsin court unreasonably applied clearly established federal law. Interpretation of the context in which the invocation is made "is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous." *Connecticut v. Barrett*, 479 U.S. 523, 529 (1987). There is no ambiguity about the plain language Saeger used: "I got nothin[g] more to say to you. I'm done. This is over." He used no conditional or equivocal words. He did not vacillate or say "maybe" or "I think" or "if," for example. In fact, for the statement to serve as the negotiating ploy the court interpreted it to be, it had to be clear. Otherwise, it could not serve its presumed purpose. Notwithstanding the clarity of the language used by Saeger, the court of appeals found that because there were reasonable competing inferences that could be drawn from the context of Saeger's statement, it was equivocal as a matter of law. *Saeger*, 2010 WI App 135, at ¶ 11.

In essence, however, the court did not really find that Saeger's actual words were unclear. Instead, the Wisconsin court found that while Saeger's actual words were clear, *he did not really mean them*. Because a reasonable person could find that Saeger might have had a motive other than to protect himself against self-incrimination, his otherwise clear invocation of his *Miranda* right not to speak to law enforcement was, in the view of the state courts, ambiguous. But if this reasoning were accepted, then it is difficult to imagine a situation where a suspect could meaningfully invoke the right to remain silent no matter what words he used. In an interrogation setting, one could always imagine plausible alternative motives for stating a desire for interrogation to end. The law does not require that a suspect unambiguously invoke the right to remain silent and also explain *why* they are doing so.

In *Anderson v. Terhune*, the Ninth Circuit, sitting en banc, held a state court unreasonably applied federal law in finding the defendant's statement was "ambiguous in context" under similar facts. 516 F.3d 781 (9th Cir. 2008) (en banc). The defendant in that case was interrogated for more

11

than three hours after he was identified as a suspect for the murder of his friend. At one point, the defendant stated "I don't even wanna talk about this no more." *Id.* at 785. After police continued to question him about his drug use on the day of the murder, the defendant said, "I'm through with this. I'm through . . . . I plead the [F]ifth." *Id.* at 785-86. The court rejected the state court's reasoning that although the defendant's words viewed in isolation were clearly an invocation of the right to remain silent, the scope of the invocation was nevertheless ambiguous because one interpretation of the words was that the defendant did not intend to completely terminate the interview. The court explained:

> Using "context" to transform an unambiguous invocation into open-ended ambiguity defies both common sense and established Supreme Court law. It is not that context is unimportant, but it simply cannot be manufactured by straining to raise a question regarding the intended scope of a facially unambiguous invocation of the right to silence. As the Supreme Court has observed, in invoking a constitutional right, "a suspect need not 'speak with the discrimination of an Oxford don.' "

516 F.3d at 787 (quoting *Davis*, 512 U.S. at 459). The *Anderson* court noted that once the defendant unambiguously and unequivocally invoked his right to remain silent, the interrogation should have immediately ended. *Id.* at 788 ("What about the words "I plead the Fifth" is unclear, ambiguous, or confusing to a reasonable officer? Nothing."). While "I plead the Fifth" is even more clear than "I got nothing more to say to you" and "I'm done,"*Anderson*'s reasoning is fully applicable here.

It is also irrelevant that a suspect invokes his right to remain silent in an "outburst" of frustration. *See Anderson*, 516 F.3d at 788 (finding that the fact that defendant's invocation came after two hours of interrogation and appeared to be a "statement[] of frustration" did not undermine an otherwise unambiguous invocation because a "suspect can both be frustrated with an interrogation and seek to terminate it"). Although the court of appeals in this case also placed emphasis on the fact that the detectives interviewing Saeger testified that he was "uncooperative and lied often" it is unclear

12

what relevance this has where Saeger clearly stated he wanted questioning to cease. Of perhaps greater import is the fact that Saeger had experience with being interrogated, that he and the officers were arguing about the federal charges, and that he continued to negotiate with the detectives immediately after stating "[t]his is over." However, where the request for questioning to stop is clear, "*postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself.*" *Smith v. Illinois*, 469 U.S. 91, 100 (1984) (emphasis in original) (discussing invocation of right to counsel); *c.f. Thompkins*, 130 S.Ct. at 2260 (finding "no principled reason" to adopt different standards for determining when an accused has invoked the right to remain silent and the right to counsel). In discussing the right to counsel, the Supreme Court explained: "[i]n the absence of such a bright-line prohibition, the authorities through 'badger[ing]' or 'overreaching'—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request . . . ." *Id.* at 98 (quoting *Oregon v. Bradshaw*, 462 U.S. 1039, 1044 (1983)).

Because Saeger's statement was unambiguous on its face (a person is not left wondering what "I got nothin[g] more to say to you" or "I'm done" or "This is over" means), the only reasonable interpretation by the police was that although Saeger said he wanted the questioning to stop, they did not think he really meant what he said. Such a foray into the mental state of the accused has never been advanced by the Supreme Court. Rather, it is exactly the kind of "difficult decision about an accused's unclear intent" sought to be avoided by the bright-line rule stated in *Miranda* and the requirement that a suspect unambiguously invoke the right to remain silent. *Thompkins*, 130 S.Ct. at 2260. The court of appeals found, essentially, that although Saeger said "no" he really meant "yes." Even given the testimony regarding the argument leading up to the invocation, the court of appeals' conclusion that

13

Saeger's statement was equivocal was an unreasonable application of established federal law. And because he prevails on his *Miranda* claim, it is not necessary to address Saeger's additional claim that his statement was involuntary.

## CONCLUSION

In sum, Saeger's rights under *Miranda v. Arizona* were violated when detectives continued to question him after he unequivocally stated that he no longer wanted to speak with them. The decision of the Wisconsin Court of Appeals to the contrary constitutes an unreasonable application of clearly established federal law. It thus follows that Saeger's petition for relief under 28 U.S.C. § 2254 should be granted. Unless the state elects to retry Saeger within 120 days of this decision, Respondent is ordered to release Saeger from custody. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   5th   day of March, 2013.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court