UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PHILLIP SAEGER,

        Petitioner,

  v.                                      Case No. 12-C-0188

LISA AVILA,

        Respondent.

**DECISION AND ORDER DENYING MOTION
TO ALTER OR AMEND JUDGMENT**

Respondent has filed a motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e), asserting that this court's judgment granting Phillip Saeger's petition for a writ of habeas corpus was based on a manifest error of law. In a decision and order granting the petition on March 6, 2013 (ECF No. 38), the court found that Saeger's rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) were violated when detectives continued to question him after he unequivocally stated that he wanted the interrogation to end and his subsequent incriminating statements were deemed admissible evidence. The court concluded that the Wisconsin Court of Appeals decision to the contrary constituted an unreasonable application of clearly established federal law, and granted Saeger's petition for relief under 22 U.S.C. § 2254. In its motion, Respondent contends that the court erred in concluding that the state court had unreasonably applied clearly established federal law in considering the context in which the Petitioner's unambiguous invocation of his right to terminate the interview was made. For the reasons that follow, Respondent's motion for reconsideration will be denied.

The issue in this case is whether Saeger unequivocally invoked his right to remain silent and to cut off questioning during a custodial interrogation. The state court of appeals concluded that the detectives reasonably may not have known whether Saeger actually wanted to invoke his right to remain silent when he stated, "You . . . ain't listening to what I'm telling you. You don't want to hear what I'm saying. You want me to admit to something I didn't . . . do . . . and I got nothin[g] more to say to you. I'm done. This is over." *State v. Saeger*, 2010 WI App 135, ¶ 3, 329 Wis. 2d 711, 790 N.W.2d 543 (unpublished). As explained previously, the United States Supreme Court has established a clear articulation rule to trigger the safeguards set forth in *Miranda*. *See Berghuis v. Thompkins*, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010); *Davis v. United States*, 512 U.S. 452, 459 (1994). If a suspect unambiguously invokes the right to remain silent, then "that the exercise of the right will be scrupulously honored" and all questioning must cease at that time. *Michigan v. Mosley*, 423 U.S. 96, 103 (1975) (quoting *Miranda*, 184 U.S. at 479). But if the request was ambiguous, then the police are not required to end the interrogation. *Thompkins*, 130 S.Ct. 2250, 2259-60. "Once a court decides whether a defendant's request . . . is ambiguous, the analysis is simple. Unfortunately, in most cases . . . the difficult decision is whether the defendant's request for counsel was ambiguous." *United States v. Hunter*, 708 F.3d 938, 942 (7th Cir. 2013) (examining the invocation of the right to counsel under *Miranda*). Yet, the Wisconsin court found ambiguity in Saeger's motive for demanding that the interrogation end–it concluded that "[t]aken in context," reasonable officers might have thought Saeger's statement was simply "fencing" or a negotiating ploy to get a better deal, and that he did not really mean to end the interrogation. *Saeger*, 2010 WI App 135, ¶ 11.

2

In its motion, Respondent first argues that the state court of appeals did not act unreasonably when it examined the context in which Saeger's statements were made in order to conclude that his invocation of his right to cut off questioning was ambiguous. Respondent contends that "numerous courts have recognized that it is permissible to consider the context in which a suspect's remarks were made, even if the words in isolation are unambiguous, in determining if a suspect has unequivocally invoked on of his rights under [*Miranda*]." (Respondent's Br. 2-3, ECF No. 40.) Respondent fundamentally misconstrues the Court's decision in arguing at length that the context in which a suspect's alleged invocation of his rights under *Miranda* is relevant. A fair reading of the decision reveals that the Court never stated that context is irrelevant in determining whether a suspect unambiguously invoked the right to remain silent. An examination of the circumstances or "context" leading up to an articulation of the right to remain silent *may and should* be considered to determine whether a suspect's statement was unequivocal and unambiguous. For example, if a suspect prefaces a statement that on its face invokes his right to remain silent by noting that he is only speaking hypothetically, a law enforcement officer could reasonably conclude that questioning could continue.

But here, the way in which the state court of appeals purported to use context to transform Saeger's unambiguous words into an ambiguous invocation was unreasonable in light of clearly established Supreme Court precedent. Saeger unequivocally articulated his desire for questioning to stop. If Saeger did not mean what he said, if as the state court held he was simply bargaining for a better deal, he no doubt would have re-engaged the detectives as they terminated the interview and prepared to leave the interrogation room. If that had occurred, the questioning could have continued. *See Mosely*, 423 U.S. at 103-4. Instead, the detectives ignored Saeger's declaration that the

3

interview was over and continued their interrogation. In concluding that Saeger did not invoke his right to terminate the interview, the state court looked not to the words Saeger used, or even the context in which he spoke them. Instead, the state court looked to what it found to be his motivation or intent, and concluded that he did not mean what he said. This court is aware of no precedent under the Supreme Court's decisions or elsewhere that holds that ambiguity can essentially be manufactured by examining a suspect's possible motive for invoking his rights. Police officers and courts are not mind-readers, nor is an examination of subjective intent contemplated by *Miranda* and its progeny.

Respondent cites several non-binding, largely state court cases to "illustrate" that the Wisconsin court's consideration of the context in which Saeger's remarks were made was not an unreasonable application of federal law. Respondent argues these cases demonstrate that "fairminded jurists could disagree on the propriety of considering the context in which otherwise unambiguous words are spoken to decide if a suspect unequivocally invoked his *Miranda* right to cut off questioning." (State's Br. 5, ECF No. 40.) But the question is not whether fairminded judges would agree or disagree; the question is what the Supreme Court has decided. The Supreme Court has said that "[t]o avoid difficulties of proof and to provide guidance to officers conducting interrogations, [the question whether an accused has invoked his rights under *Miranda*] is an objective inquiry." *Davis*, 512 U.S. at 458-59; *see also Thompkins*, 130 S. Ct. at 2260 ("A requirement of an unambiguous invocation of *Miranda* rights results in an objective inquiry that 'avoid[s] difficulties of proof and ... provide[s] guidance to officers' on how to proceed in the face of ambiguity.). An objective inquiry looks at the accused's words and surrounding circumstances; not his subjective state of mind.

4

As already stated, this court does not disagree that context is important. But consideration of context cannot justify concluding that "no" means "yes" because the suspect may be simply bargaining for a better deal. If this is the rule, then an essential part of *Miranda* might as well be considered gone. No matter how clearly a suspect invokes either the right to remain silent or the right to counsel, it can always be said that he really didn't mean it, that it was intended only as a bargaining chip. Such an inquiry into the subjective state of mind of an accused is directly contrary to clearly established federal law, which states that the determination of whether an accused has invoked his rights under *Miranda* "is an objective inquiry." *Id.*

Moreover, while considering some purportedly illustrative cases, Respondent fails to consider a wealth of habeas cases that have reached results consistent with Supreme Court precedent and with the Court's decision here. For instance, in *McGraw v. Holland*, the Sixth Circuit rejected the notion that the defendant's repeated statements that she did not want to talk about the alleged crime were ambiguous because her invocation might have stemmed from a motive other than her privilege to avoid self-incrimination–namely, her fear of retaliation because she was apparently afraid of being shot and killed if she talked to police. 257 F.3d 513, 519 (6th Cir. 2001) ("We are aware of no support, either in logic or in law, for the proposition that an otherwise unambiguous expression of a desire to remain silent can somehow become ambiguous if prompted by a fear of retaliation."). The court explained that where "there was nothing ambiguous" about the suspect's statement, without any qualification, that she did not want to talk, "it would simply not be reasonable to take her words at less than face value." *Id.*

Likewise, in *Anderson v. Smith*, 751 F.2d 96 (2d Cir. 1984), the court found no "latent ambiguity" in a suspect's response of "no" when asked if he wished to talk to police. The court

5

found the defendant's right to remain silent had been violated when police ignored his statement and proceeded to ask him "why" he did not want to talk, explaining,

> the interrogator *never needs to know why a suspect wants to remain silent*; once it is clear that the suspect wants to remain silent, the interrogation should cease. After all, *the Fifth Amendment assumes that the suspect invokes his right in order not to be a witness against himself; that is reason enough*. An interrogator would only want to probe beyond the suspect's presumed desire to avoid self-incrimination if he expected either to evoke an incriminating response or to get a clue as to how the suspect might be persuaded to abandon his rights.

*Id.* at 105 (emphasis added) (*overruled on other grounds*, *Maleng v. Cook*, 490 U.S. 488 (1989)).

Other federal courts consistently reach the same result: "[a]lthough the context and nuances of a request to end questioning can create ambiguity, they cannot overcome a clear expression of the desire to remain silent." *United States v. Rambo*, 365 F.3d 906, 910 (10th Cir. 2004) ("In this case, [the detective] asked [the defendant] if he wanted to discuss the 'stuff,' i.e., the robberies, and [the defendant] said 'No.' There is no nuance nor context to vary the unequivocal meaning of [the defendant's] single word, monosyllabic response. His response, 'No,' could only mean an invocation of his right to remain silent."); *see also Hurd v. Terhune*, 619 F.3d 1080, 1089 (9th Cir. 2010) (finding that defendant's responses to officers' requests to reenact a shooting, including "I don't want to do that," "No," "I can't," and "I don't want to act it out because that–it's not that clear" was an objectively unambiguous invocation of his right to remain silent); *Arnold v. Runnels*, 421 F.3d 859, 866 (9th Cir. 2005) (finding where a defendant stated he did not want to talk on tape, but officers proceeded to tape-record an interrogation anyway, "it is difficult to imagine how much more clearly a layperson like Arnold could have expressed his desire to remain silent"); *Davis v. Greer*, 13 F.3d 1134, 1138 (7th Cir. 1994) (finding suspect's statement, "I don't want to talk no more" and "I don't want to talk about it any more" sufficient to terminate questioning and warning prosecutors

6

and law enforcement agents that "when the arrestee says he wants to quit talking, and says he doesn't want to answer any more questions, *stop the questioning*") (emphasis in original); *Christopher v. State of Fla.*, 824 F.2d 836, 840-41 (11th Cir. 1987) (finding defendant's statement that "I got nothing else to say" was an unambiguous invocation of his right to silence and therefore, officers violated his right to cut off questioning by continuing the interrogation).

Respondent's reliance on *Bobo v. Kolb*, 969 F.2d 391 (7th Cir. 1992) as binding precedent is also unavailing. The respondent cites the case for the proposition that "[w]hen determining whether a suspect has invoked his right, a court should examine the entire context in which the claimant spoke." 969 F.2d at 396 (internal quotations omitted) (quoting *Bradley v. Meachum*, 918 F.2d 338, 342 (2d Cir. 1990)). But again, the Court does not disagree that examining the context in which a statement is made may be a relevant inquiry. In any event, *Bobo* considered whether a suspect had invoked his *Miranda* rights when, after receiving *Miranda* warnings and answering officers' questions, he stopped responding. The court explained that given the circumstances, the fact that the suspect had become mute was an ambiguous invocation of his rights at best because his silence "just as easily [have] been a pause while [Mr. Bobo] considered the advisability of answering further questions." *Id.* at 397. Indeed, simply not speaking would not be considered a clear articulation of the right to cut off questioning. *See Thompkins*, 130 S.Ct. at 2260 (finding the suspect's prolonged non-responsiveness to investigators' questions was an ambiguous or equivocal expression of his desire to cease interrogation, and therefore insufficient to invoke his privilege against self-incrimination). *Bobo* tells us little here, where far from not responding to questions, Saeger made an unambiguous statement that he did not wanted the interrogation to end. Moreover,

7

*Bobo* contemplates that "[e]ven an *equivocal* indication" may cause questioning to cease. *Id.* at 39 (emphasis added). Thus, nothing in *Bobo* changes the result here.

Respondent also questions the Court's reliance on *Connecticut v. Barrett*, 479 U.S. 523 (1987), and argues it was error to find that the state court of appeals unreasonably applied *Barrett*. Respondent further notes that the Court cited five Supreme Court cases, but did not explicitly identify which of these decisions it believed the state court of appeals unreasonably applied–Respondent assumes the Court meant to apply only *Barrett*. However, Respondent again mischaracterizes the Court's decision. Respondent apparently ignores the Court's discussion of *Miranda*, *Thompkins*, and *Davis* and instead emphasizes the Court's single reference to *Barrett*. This Court looked to *Barrett* to determine what it means to "unequivocally" invoke a right under *Miranda.* The Supreme Court's explanation supports a conclusion that it was unreasonable to find that Saeger did not unequivocally invoke his rights here. The Seventh Circuit similarly looked to *Barrett* recently in assessing whether an invocation of the right to counsel was ambiguous, explaining, "*Barrett* . . . offers some guidance, requiring courts to evaluate a defendant's request 'as ordinary people would understand' it, and 'to give a broad, rather than a narrow, interpretation to a defendant's request for counsel.'" 708 F.3d at 942. Respondent's conclusion that this Court committed legal error because it unreasonably applied *Barrett* lacks merit.

Similarly unpersuasive is Respondent's argument that this Court failed to give deference to the state court of appeals' determination that Saeger did not unambiguously invoke his *Miranda* right to cut off questioning because it was a factual finding. The Court does not question the Wisconsin's court's factual determinations; rather, taking the state court's findings regarding Saeger's statements, his actions, the detective's beliefs, and the context and circumstances

8

surrounding the interrogation as true, the legal conclusion reached was unreasonable. The question of whether an accused has invoked his *Miranda* rights requires an objective inquiry in order to "avoid difficulties of proof and to provide guidance to officers conducting interrogations." *Davis*, 512 U.S. at 458-59. Viewing Saeger's words and the "context" the Wisconsin court of appeals relied on, the only conclusion a court can reach is that Saeger unequivocally and unambiguously invoked his right to cut off questioning. No competing, reasonable inferences could be drawn from Saeger's statement that "I got nothin[g] more to say to you. I'm done. This is over."

The AEDPA standard is "demanding but not insatiable" and the deference owed state courts "does not by definition preclude relief." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). Had the state court reasonably decided Saeger's claims on appeal, this Court would defer, even if this Court might have reached a different result. But here, there is no theory under which a fairminded jurist could agree that the decision of the state court of appeals was in accord with Supreme Court precedent, and consequently, it was unreasonable. *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). Accordingly, for the reasons stated herein and set forth in the Court's decision granting Saeger's habeas petition, Respondent's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) is DENIED.

**SO ORDERED** this __1st__ day of May, 2013.

          s/ William C. Griesbach
          William C. Griesbach, Chief Judge
          United States District Court